IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| *IN RE SYNGENTA AG MIR 162 CORN LITIGATION*<br><br>**THIS DOCUMENT RELATES TO:**<br><br>*The DeLong Co., Inc. v. Syngenta AG, et al.,*<br>No. 17-cv-2614-JWL-JPO | No. 17-cv-2614-JWL-JPO<br>MDL No. 2591 |

**DELONG'S RESPONSE IN OPPOSITION TO SYNGENTA'S**
**MOTION TO EXCLUDE EXPERT TESTIMONY**
**AND OPINIONS OF RANDAL GIROUX**

**FILED UNDER SEAL:**
**CONTAINS DISCOVERY MATERIAL**
**MARKED HIGHLY CONFIDENTIAL/CONFIDENTIAL**
**PURSUANT TO PROTECTIVE ORDER**

## **INTRODUCTION**

The MDL Coordination Order expressly intended to "minimize undue duplication of discovery and undue burden on courts, parties, and *non-partie*s in responding to discovery requests, save substantial expense by the parties and *non-parties*, and produce substantial savings in judicial resources." MDL ECF No. 1099 at 2 (emphasis added). Consistent with this Order, in May 2019, DeLong and Syngenta began discussing the application of the Coordination Order to this litigation. Ex. A-1 at 7-8. Ultimately, the Parties agreed in writing as to which depositions originally taken in the MDL "will be treated as though taken in this case[.]" *Id.* at 4. This agreement specifically included the depositions of Dr. Randal Giroux taken on May 16-17, 2016, and June 9-10, 2016. *See id.* at 2 (identifying certain depositions in MDL ECF No. 3587-1, including the Dr. Giroux depositions). In those depositions, Dr. Giroux extensively discussed his knowledge of the biotech industry generally and his opinions, reached as a percipient witness, regarding Syngenta's premature commercialization of Viptera and Duracade specifically, the very knowledge DeLong seeks to present to a jury in this litigation.

The decision by the Parties to include Dr. Giroux's depositions as if they were taken in this case was not a surprise because from the very beginning of this litigation, both Syngenta and DeLong identified Dr. Giroux as having personal knowledge directly relevant to this litigation. Dr. Giroux was identified in DeLong's initial Rule 26(a)(1) disclosures, and in Syngenta's Supplemental Rule 26(a)(1) Initial Disclosures, both served on June 25, 2019.[1]

Based on his relevant knowledge and the opinions already given, on which Syngenta has

---

[1] *See* Exs. A-2 at 10 and A-3 at 27. In its Disclosures, Syngenta stated that Dr. Giroux was knowledgeable on the following topics: "Export markets for U.S. corn; market for U.S. corn in China; approval process for GMO traits in foreign markets; channeling and segregation of corn with particular traits; testing for GMO traits; rejected shipments of U.S. corn in China; . . . involvement in biotechnology organizations; status of regulatory approval of Viptera and/or Duracade . . . ." Ex. A-3 at 27.

-1-

cross examined him several times, DeLong subsequently designated Dr. Giroux as a non-retained expert. *See* ECF No. 65-1 at 13-20 (Exhibit A-2 thereto). Much like a treating physician who would be unavailable for trial, the expert designation advised Syngenta that DeLong intended to present Dr. Giroux exclusively through his prior testimony, on which Syngenta vigorously cross-examined him not only in those May 16-17 and June 9-10, 2016 depositions, but in an additional deposition occurring on November 16, 2016 and at the Kansas MDL trial on June 9, 2017.

Despite having an unprecedented number of opportunities to cross-examine this single witness, Syngenta asks this Court to exclude Dr. Giroux because DeLong disclosed Dr. Giroux "without tendering him for cross-examination." ECF No. 95 at 1. Yet, Dr. Giroux was not retained by DeLong, and DeLong is not required to tender him for a deposition. ECF No. 67 at 4-5. In any event, Syngenta cross-examined Dr. Giroux on his factual knowledge and opinions multiple times. Syngenta may seek to present to a jury its cross-examinations of Dr. Giroux in multiple depositions and at trial, which provide more than a sufficient basis for a jury to "assess his credibility." ECF No. 95 at 1. As discussed below, the Tenth Circuit readily allows experts to appear at trial via prior testimony, and there is no legal basis to preclude his testimony under the rules.

Recognizing the weakness of its primary argument, Syngenta pivots to argue Dr. Giroux's testimony should be excluded because he has not reviewed any of DeLong's documents and knows nothing about DeLong's case against Syngenta. *Id.* at 1-2. This is a red herring. As the Court knows, Dr. Giroux's opinions in those bellwether proceedings in this MDL were proffered on behalf of *both* the producer *and* non-producer plaintiffs. None of Dr. Giroux's opinions, either in this case or in the other cases in this MDL, depended on the particular plaintiff. Syngenta was afforded the opportunity to depose him regarding any relevant distinctions. They did not because there are none. Dr. Giroux's opinions focus on the biotech industry's standard of care in

commercializing a new GM trait and Syngenta's commercialization of Viptera and Duracade. The commercialization practices specifically undertaken by Syngenta for new biotech traits do not require rely on a review of DeLong's documents or an understanding of its business, just as Dr. Giroux did not rely on the producer or non-producer bellwether plaintiffs' documents in the prior bellwether proceedings in this MDL. Likewise, Dr. Giroux's opinions on Syngenta's decision to commercialize Viptera and Duracade before obtaining Chinese approval, and Syngenta's breach of the standard of care, are not unique to DeLong's facts and circumstances. The particular impact on an individual plaintiff, like DeLong, will be provided by other witnesses, not Dr. Giroux.

Moreover, Syngenta's argument that it should have been permitted to depose Dr. Giroux about the "three years of intervening events," ECF No. 95 at 2, is unfounded. Even if subsequent events affecting the functionality of China's regulatory system were somehow relevant to Syngenta's commercialization decision, the Court already precluded Dr. Giroux from giving "any opinion based on the operation of that system, including any opinion that China has a functioning regulatory system, that China acted predictably in rejecting Syngenta's application, that China generally acts for science-based reasons, or that China acted with 'regulatory discretion.'" MDL ECF No. 3134 at 41. Syngenta asks the Court to "continue to exclude these opinions under Daubert[.]" ECF No. 95 at 2 n.1. DeLong agrees to be bound by those prior *Daubert* rulings in this case,[2] and thus will not be offering testimony that might conceivably make subsequent conduct *by China* a relevant line of inquiry.

Syngenta's motion is nothing more than a procedural gambit seeking to avoid a jury

---

[2] DeLong incorporates the Kansas producer class plaintiffs' opposition to Syngenta's motion to exclude in that case in order to preserve those issues for appeal. In footnote 1 of this motion, Syngenta "also incorporates the additional challenges to Giroux's opinions that the Court previously considered and denied, solely to preserve them for appeal." *Id.* It is unclear which challenges Syngenta intends to reference in that statement. To the extent Syngenta is incorporating its prior motion to strike in this case, DeLong also incorporates its response in opposition, ECF No. 65.

-3-

considering Dr. Giroux's knowledge on the merits of this dispute. Syngenta cross-examined Dr. Giroux on the exact opinions that will be presented at a trial in this matter and the Court should deny Syngenta's attempt to exclude Dr. Giroux's previous testimony.

## **ARGUMENT**

None of Syngenta's arguments provide a sound basis to exclude DeLong from presenting Dr. Giroux's previous testimony to a jury in this lawsuit. The jury will be able to fully evaluate Dr. Giroux's credibility – just like the jury will with countless other witnesses whose testimony was obtained in the MDL. Moreover, Dr. Giroux's opinions are not altered by DeLong's case.

### **I.  DeLong may present Dr. Giroux by his prior testimony.**

Rule 32(a)(1) expressly permits the use of a deposition at trial in lieu of live testimony and DeLong satisfies the Rule's express elements to use Dr. Giroux's deposition testimony—a point Syngenta does not contest. Dr. Giroux is unavailable under Rule 32(a)(4)(B) and (D). He is more than 100 miles from the courthouse, and DeLong has not caused Dr. Giroux's absence because he is not within DeLong's control. DeLong is also unable to procure his attendance at trial by subpoena because he does not reside in, is not employed in, and does not perform a substantial amount of work in, Kansas. Of course, Syngenta's counsel was present and cross-examined Dr. Giroux at the depositions that DeLong intends to present at trial. And, the Court can take up at the appropriate time whether any of the testimony would otherwise be inadmissible under the Rules of Evidence as if Dr. Giroux were testifying in person.

Syngenta argues that the Tenth Circuit prefers live testimony at trial, and that Dr. Giroux's deposition testimony should not be admitted because certain factors weigh in favor of requiring live testimony. There are multiple reasons this argument lacks merit. First, the cases Syngenta cites involve discrete circumstances, none of which involve a situation where the witness's

-4-
4850-9516-7184.9

attendance cannot be procured by subpoena. Dr. Giroux has made it clear he will not testify live, and cannot be subpoenaed. Therefore, the balancing test is not applicable here. Even if the Court looked past that distinction, the cases do not support Syngenta. One of the discrete circumstances is where there is unfair surprise to the opposing party. *Fish v. Kobach*, No. 16-2105-JAR, 2018 WL 116534, at *5 (D. Kan. Feb. 27, 2018). Syngenta cannot claim unfair surprise, as DeLong made its intention known to Syngenta at the time it disclosed Dr. Giroux that he would not testify live. *Amos v. W.L. Plastics, Inc.*, No. 2:07-CV-49 TS, 2010 WL 257283, at *1 (D. Utah Jan. 15, 2010) (denying defendant's motion in limine to exclude out-of-state expert where plaintiffs "put Defendant on notice that they may present Ms. Crabtree's testimony by deposition in lieu of live testimony at trial.").

The other discrete circumstance is where the witness is unavailable because of the 100 mile exception in Rule 32(a), and the trier of fact is required to evaluate the witness's credibility. *Fish*, 2018 WL 116534, at *5 (D. Kan. Feb. 27, 2018). The factors sufficiently balance in DeLong's favor. DeLong has a substantial need to present the testimony. Dr. Giroux is a non-retained expert not under DeLong's control. Dr. Giroux and Cargill have made clear that he will not appear live at trial in Kansas. ECF No. 65-2 ¶¶ 6-7. This is not mere geographic unavailability. Dr. Giroux is actually unavailable, as opposed to merely being more than 100 miles from the courthouse. He has refused to appear despite requests from both parties. *Id.* Dr. Giroux makes convincing arguments that a subsequent deposition is unduly burdensome and unnecessary because Syngenta has deposed him on five separate occasions, including after plaintiffs in the MDL disclosed him as a non-retained expert using *the exact same disclosure* made here on behalf of DeLong, and has cross-examined him, on these exact opinions, at two trials—in this MDL and in Minnesota.[3]

---

[3] While DeLong believes Dr. Giroux's arguments are pertinent to the Court's resolution of *Syngenta's* motion, it acknowledges that Dr. Giroux's motion to quash will not be decided today.

-5-

Syngenta has also suffered no prejudice whatsoever. It has cross-examined Dr. Giroux on his testimony—opinions that, as discussed below in Section II, do not hinge on DeLong's circumstances—multiple times. And, even if the type of plaintiff was relevant to Dr. Giroux's opinions, Syngenta had opportunities to ask those unique questions in this MDL because Dr. Giroux's original expert disclosure applied to all "Bellwether Trial Plaintiffs," including non-producer bellwether plaintiffs Rail Transfer, Inc., and Trans Coastal Supply Company, each of whom were involved in the DDGS trade, just like DeLong. ECF No. 65-1 at 13-26 (Exs. A-2 & A-3 thereto). Yet, Syngenta's counsel did not ask Dr. Giroux deposition a *single* question about Trans Coastal or Rail Transfer in his expert deposition—those names never came up. Ex. A-4. Syngenta has not identified any DeLong-specific facts on which it would cross-examine Dr. Giroux and should be precluded from raising any such new arguments in its Reply.

Syngenta also does not point out any specific heightened credibility concerns with Dr. Giroux. Any argument that recorded testimony from an expert deprives the jury of the ability to assess Giroux's credibility is without merit. Rule 32(a) permits the use of depositions and prior testimony, and, as the Court knows, many witnesses were presented in this manner in the Kansas class trial, including nearly all of Syngenta's employees, whose credibility was equally important. To the extent there are credibility concerns, those are alleviated by the fact that Syngenta can present its own videotaped cross-examinations of Dr. Giroux to let the jury assess his demeanor and make credibility determinations. *See Eidson v. Wal-Mart Stores, Inc.*, Civ. A. No. 92-2172, 1993 WL 393795, at *2 (D. Kan. Sept. 9, 1993) ("the videotaped deposition . . . included cross-examination of Dr. Lichtor by plaintiff's counsel, who had ample opportunity to impeach the credibility of Dr. Lichtor as an expert witness.").

Ultimately, Syngenta does not cite to a single case in which the testimony of a non-retained

-6-

expert, who was cross-examined on five separate deposition days and one day at two trials, is barred from testifying by deposition. The Tenth Circuit has permitted the offering party to use deposition testimony when the non-retained expert witness is unavailable. *Alfonso v. Lund*, 783 F.2d 958, 960–61 (10th Cir. 1986) (admitting treating physician's deposition testimony when the doctor was unavailable because he was out of the country); *see also Fletcher v. Thompson*, 895 F.3d 1010, 1021 (8th Cir. 2018) (allowing plaintiff to read deposition of expert who resided and worked in another state). The Court should allow DeLong to use Dr. Giroux's deposition testimony at a trial in this litigation. Furthermore, DeLong is entitled to use Dr. Giroux's prior trial testimony. F.R.E. 804(a)(5)(A), (b)(1). Syngenta points to no authority prohibiting DeLong from using his prior trial testimony. It only argues that doing so would unduly prejudice Syngenta because the jury could not assess his credibility, and because Syngenta cannot cross-examine him again. Those arguments fail for the reasons already explained. Syngenta had the opportunity, and motive, to develop those issues in its prior trial cross-examination. It chose not to do so.

## II.     Dr. Giroux's opinions are reliable.

Syngenta's final argument is that Dr. Giroux's opinions are unreliable because he has not reviewed DeLong's case. Syngenta specifically points to the fact that "unlike the producer plaintiff actions, DeLong's damages claims focus on DDGS, which were not a primary focus of Giroux's previous expert disclosure." ECF No. 95 at 9. But Dr. Giroux is not giving an opinion about DeLong's damages. He is giving opinions about the standard of care for commercializing a new GM trait. Just as Dr. Giroux did not need to know the circumstances of each of bellwether plaintiff, he does not need to know, nor would it be relevant to question him, about DeLong's circumstances.

This is obvious from the fact that Dr. Giroux's MDL disclosure applied to all "Bellwether Trial Plaintiffs," including non-producers Rail Transfer, Inc., and Trans Coastal Supply Company,

-7-

Inc. ECF No. 65-1 at 13-26.  Like DeLong, DDGS made up a substantial part, if not all, of those non-producers' business models.  *Id.* at 27-35 (Ex. A-4 thereto).  Dr. Giroux's disclosure stated he was expected to testify about: "the uses of U.S.-grown corn (feed, ethanol, and exports)[.]"  *Id.* at 15 (Ex. A-2 thereto).   Yet, Syngenta never thought to question Dr. Giroux about DDGS in his expert deposition.  Like the terms "Trans Coastal" and "Rail Transfer," the term "DDGS" never came up in any of Syngenta's multiple depositions of Dr. Giroux.  Ex. A-4.[4]  That is unsurprising, because the specifics of DDGS are not germane to Dr. Giroux's opinions – not during the Kansas trial and not now.  Rather, his opinions were formed regarding general market-wide information, including the size of corn and DDGS imports into China around the period of commercialization.  Notably, Syngenta fails to explain what, if any *relevant* questions it would ask that it could not have asked in the prior depositions.

The fact is that Dr. Giroux's opinions about biotech companies and commercialization do not vary based on whether the plaintiff sells corn or DDGS.[5]  Dr. Giroux's disclosure stated that the "agricultural supply chain is interdependent, and that the commercialization decisions of biotechnology companies like Syngenta can have a significant impact on downstream stakeholders and *all of U.S. agriculture*."  ECF No. 65-1 at 15 (emphasis added).  His disclosure also stated that "commercialization decisions of biotechnology companies like Syngenta can impose substantial risk and inflict substantial harm *on the entire agricultural supply chain*."  *Id.* (emphasis added).  Further, Dr. Giroux's testimony on the standard of care for responsible commercialization focuses

---

[4] Dr. Giroux testified in the Kansas producer class trial that China was a "key market" in 2010 because it imported over a million tons of corn and two millions tons of DDGS, and that China is "one of the largest U.S. customers for DDGS."  ECF No. 65-1 at 39 (608:17-19).  He also testified that the trade assessment should be done using both corn and by-products like DDGS.  *Id.* at 38-40 (607:10-16; 608:20-609:2).

[5] Ironically, Syngenta's motion engages in classic equivocating.  On the one hand, Syngenta claims DeLong "recycle[s]" Giroux's expert report, and on the other hand claims that his opinions are dependent on DeLong's specific facts and circumstances.

solely on the actions of biotech companies, not on producers or non-producers, and not on DeLong. *Id.* His opinions do not require him to analyze DeLong's documents—just as they did not require him to analyze documents or testimony from the Kansas plaintiffs, Trans Coastal, or Rail Transfer

Syngenta next argues it should be able to test Dr. Giroux's opinions based on subsequent events.[6] But Syngenta provides no basis to conclude these subsequent events are relevant to his opinions. Dr. Giroux opined that Syngenta's decisions to commercialize Viptera for first planting in 2011, and Duracade for first planting in 2014, were unreasonable in 2011 and 2014.[7] Syngenta points to no subsequent evidence relevant to its commercialization decisions in 2011 and 2014.

Syngenta argues that "evidence of the recent trade war between the U.S. and China . . . demonstrates the difficulty of projecting China's corn imports and the speculativeness of asserting that China was a 'key export market' for U.S. corn." ECF No. 95 at 9. But Dr. Giroux testified that China was a key market in 2011 and would have been in 2014. A trade war initiated with China after the fact, that did not exist at the time of commercialization, is irrelevant to his opinions. Notably, as the Court is aware, even Syngenta's employees, such as Jack Bernens, declared China to be a "significant" or "key" market before Syngenta sold one Viptera seed.

Syngenta contends Dr. Giroux has not evaluated "that, in November 2018, China announced a 'stunning revision' of its domestic corn production statistics for the preceding eleven years, revealing that it had stockpiled even more corn than previously known." ECF No. 95. at 9-

---

[6] In a footnote, Syngenta argues that Magistrate Judge O'Hara concluded that Rule 26(b)(4) "entitles Syngenta to depose DeLong's experts and makes no distinction between retained and non-retained experts." ECF No. 95 at 7 n. 2. But Dr. Giroux was deposed on his opinions, and Rule 26(b)(4)(A) makes a distinction only with experts required to give reports that "the deposition may be conducted **only after** the report is provided." (emphasis added).

[7] Syngenta also contends that Dr. Giroux should be asked about whether China's failure to approve a single new biotech event between July 2017 and January 2019 impacts his opinions. These facts are not relevant for the same reasons – they were not available to Syngenta at the time it decided to commercialize.

10.  This report is not relevant, however, because it does not establish that Syngenta disbelieved the originally reported statistics when deciding to commercialize.  Further, the data in the report does not address (nor restate) China's actual imports of U.S. corn and DDGS – the key statistics that Syngenta and Dr. Giroux relied on when concluding that China was a key export market.

Even if such evidence was relevant, Syngenta's inability to question Dr. Giroux about these issues does not prejudice its defense.  Philip Shull, one of Syngenta's experts, addresses these very issues in his report.  Syngenta can seek to offer this evidence through Mr. Shull. Syngenta may also try to cross examine DeLong's damages expert, Dr. Carter, about these facts too.[8]

Finally, should the Court exclude Dr. Giroux's opinions as an expert witness under Rule 702, his fact testimony is still admissible, as are any lay opinions offered under Rule 701. Syngenta's request to preclude "DeLong from presenting Giroux's testimony at trial," ECF No. 95 at 2, would prohibit DeLong from offering non-expert opinion testimony.  The Court cannot sanction that request – the admissibility of lay opinions and fact testimony is for another day.

## CONCLUSION

Because Syngenta has already deposed Dr. Giroux multiple times on his opinions and because Dr. Giroux's testimony will assist a jury, the Court should deny Syngenta's Motion.

---

[8] DeLong's motion to exclude Shull includes arguments that Shull should not be allowed to testify on these issues because they are not relevant.  DeLong maintains that position here, and would oppose any attempt to question Dr. Carter about these facts for the same reasons.

Dated:  November 6, 2020.

                                Respectfully submitted,

                                */s/ William B. Chaney*
                                WILLIAM B. CHANEY
                                ANDREW K. YORK
                                WILLIAM N. DRABBLE
                                LONDON ENGLAND
                                GRAY REED
                                1601 Elm Street, Suite 4600
                                Dallas, Texas  75201
                                Telephone:  (214) 954-4135
                                Facsimile:  (214) 953-1332
                                wchaney@grayreed.com
                                dyork@grayreed.com
                                wdrabble@grayreed.com
                                lengland@grayreed.com

                                PATRICK J. STUEVE, KS Bar #13847
                                STUEVE SIEGEL HANSON LLP
                                460 Nichols Road, Suite 200
                                Kansas City, Missouri  64112
                                Telephone:  (816) 714-7100
                                Facsimile:  (816) 714-7101
                                stueve@stuevesiegel.com

                                DON M. DOWNING
                                GRAY, RITTER & GRAHAM, P.C.
                                701 Market Street, Suite 800
                                St. Louis, Missouri  63101
                                Telephone:  (314) 241-5620
                                Facsimile:  (314) 241-4140
                                ddowning@grgpc.com

                                SCOTT POWELL
                                HARE WYNN NEWELL & NEWTON
                                2025 3rd Ave. North, Suite 800
                                Birmingham, Alabama  35203
                                Telephone:  (205) 328-5330
                                Facsimile:  (205) 324-2165
                                scott@hwnn.com

                                      DAVID C. MOORE
                                      Wisconsin State Bar No. 1018417
                                      NOWLAN & MOUAT LLP
                                      100 S. Main Street
                                      P. O. Box 8100
                                      Janesville, Wisconsin 53547-8100
                                      Telephone: (608) 755-8100
                                      Facsimile: (608) 755-8110
                                      dmoore@nowlan.com

                                      ATTORNEYS FOR PLAINTIFF,
                                      THE DELONG CO., INC.

OF COUNSEL:

JERRY SANTANGELO
SPERLING & SLATER, P.C.
55 West Monroe Street, Suite 3200
Chicago Illinois 60603
Telephone: (312) 445-4935
Facsimile: (312) 641-6492
jsantangelo@sperling-law.com


## CERTIFICATE OF SERVICE

       The undersigned hereby certifies that, on November 6, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record.


                                      */s/ William B. Chaney*
                                      WILLIAM B. CHANEY