IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: SYNGENTA AG MIR 162 | ) | MDL No. 2591 |
| CORN LITIGATION | ) | |
| | ) | Case No. 14-md-2591-JWL |
| This Document Relates To: | ) | |
| | ) | |
| *The DeLong Co., Inc. v. Syngenta AG, et al.*, | ) | |
| No. 17-2614-JWL | ) | |
| _____ | ) | |

## <u>**MEMORANDUM AND ORDER**</u>

In this single case within this multi-district litigation (MDL), plaintiff The DeLong Co., Inc. ("DeLong") asserts a claim of negligence against defendants (collectively "Syngenta").  The Court previously ruled that the claim was barred by the applicable statute of limitations, and it therefore granted summary judgment in favor of Syngenta, *see In re Syngenta AG MIR 162 Corn Litig.*, 2021 WL 365091 (D. Kan. Feb. 2021) (Lungstrum, J.), but the Tenth Circuit reversed, ruling that a question of fact remained concerning that issue. *See DeLong Co. v. Syngenta AG*, 2022 WL 1510596 (10th Cir. May 13, 2022) (unpub. op.).

Upon remand, the case presently comes before the Court on Syngenta's motion for summary judgment (Doc. # 106), specifically the bases asserted by Syngenta for summary judgment that the Court declined to address in its previous summary judgment order.  For the reasons set forth below, the motion is **granted in part and denied in part**, as follows: the motion is granted with respect to DeLong's claim of negligence with respect to Syngenta's commercialization of Duracade; the motion is otherwise denied.

The case also comes before the Court on DeLong's motion for summary judgment on various defenses asserted by Syngenta (Doc. # 90).  As more fully discussed below, plaintiff's motion is **granted in part and denied in part**.  The motion is granted with respect to the following defenses:  assumption of the risk; comparative negligence; superseding or intervening cause; compliance with industry standards or government regulations; collateral sources; specific defenses to punitive damages; and legitimate business and economic justifications.  The motion is denied with respect to the following defenses:  application of the public policy factors to preclude liability; mitigation of damages; antitrust defense; and the statute of limitations.

## I.    <u>Summary Judgment Standards</u>

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *See Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006).  An issue of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way."  *See Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).  A fact is "material" when "it is essential to the proper disposition of the claim."  *See id.*

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *See id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant may not simply rest upon the pleadings but must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof." *See Garrison v. Gambro*, Inc., 428 F.3d 933, 935 (10th Cir. 2005). To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *See Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the Court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *See Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

## II.   **Syngenta's Motion for Summary Judgment**

### A.   *Economic Loss Doctrine*

DeLong is an exporter of Dried Distillers Grains with Solubles ("DDGS"), a corn by-product.  In its sole remaining claim, DeLong alleges that Syngenta was negligent in its commercialization of Vitpera and Duracade, genetically-modified corn seed products, before those products' traits were approved for import by China.  The parties agree that DeLong's negligence claim is governed by the substantive law of Wisconsin, where DeLong resides.  *See In re Syngenta AG MIR 162 Corn Litig.*, 2019 WL 4013962, at *4 n.4 (D. Kan. Aug. 26, 2019) (Lungstrum, J.) (common-law claims in the present action are governed by Wisconsin law); *see also In re Syngenta AG MIR 162 Corn Litig.*, 131 F. Supp. 3d 1177, 1188 (D. Kan. 2015) (Lungstrum, J.) (substantive law of each MDL plaintiff's home state governs that plaintiff's claims).

Syngenta first seeks summary judgment on the basis of its argument that the economic loss doctrine (ELD) precludes recovery in tort by DeLong of its alleged economic damages.  Syngenta does not argue for application of a contractual version of the ELD, which might apply if the parties were in a contractual relationship or within the same chain of contracts.  Rather, as it did in the main MDL case, Syngenta argues for application of the stranger economic loss doctrine (SELD), which has been applied in the absence of any contractual or direct relationship between parties.

In the main MDL case, the Court declined to apply the SELD under any applicable state's law at the pleading stage.  *See Syngenta*, 131 F. Supp. 3d at 1195-96.  The Court

noted that the doctrine is not applied absolutely and is subject to exceptions; that the rationales supporting the SELD would not necessarily be furthered by application in this case; that this was not a lack-of-access case (the type of case in which the doctrine had been applied); that liability would not be too remote, as Syngenta allegedly foresaw these very economic losses; that the scope of liability would not be completely open-ended, as the plaintiffs represented a discrete group within an interconnected market; that the effects would not be disproportionate to the wrongful conduct that caused the very injuries foreseen; and that damages would not be too speculative, given the commodity markets for corn and milo. *See id.*  Thus, the Court ruled that it would not apply the SELD unless a particular state's law essentially required its application in this case. *See id.* at 1196.

In arguing in favor of application of the SELD in this case, Syngenta primarily relies on the ELD's general principle that a party may not recover in tort purely economic damages.  At the same time, however, Syngenta states in a footnote that although it "preserves its arguments as to the [SELD] more broadly, it does not intend to relitigate those issues in this motion and instead focuses on why the Court's earlier rulings do not apply here."  Thus, Syngenta has not explained why the Court should abandon its prior decision not to apply the SELD in the absence of state law requiring its application here.  Nor has Syngenta shown that Wisconsin law requires the SELD's application in this situation.  Syngenta argues that Wisconsin courts have not limited the ELD's application only to certain types of cases, and it cites a broad statement by the Seventh Circuit that Wisconsin would decline "in all circumstances" to allow a negligence suit for economic

damages.  *See Midwest Knitting Mills, Inc. v. United States*, 950 F.2d 1295, 1300 (7th Cir. 1991).  The Court, however, specifically addressed *Midwest Knitting* in its prior opinion, in which it noted that since that broad pronouncement by the Seventh Circuit, "Wisconsin courts have consistently defined the ELD as a doctrine intended to prevent a party to a contract from employing tort remedies to compensate for economic losses arising from the contract."  *See Syngenta*, 131 F. Supp. 3d at 1206 (citing cases).[1]  The Court thus concluded:

> Accordingly, based on this caselaw, the Court cannot say that Wisconsin courts have adopted the SELD, let alone that they would adopt the SELD in all cases without exception and without regard to a consideration of the doctrine's purposes.

*See id.*  Syngenta has not provided any additional authority undermining that conclusion by the Court.

Syngenta does argue that the present case may be distinguished from the main MDL case because unlike other non-producers, DeLong could and actually did allocate the risk of loss from Chinese rejection in its purchase and sale contracts.  Syngenta notes that one purpose of the ELD is to allow parties to commercial transactions to allocate risks.  *See Digicorp, Inc. v. Ameritech Corp.*, 662 N.W.2d 652, 659 (Wis. 2003) (cited by Syngenta). In making that statement, however, the Wisconsin Supreme Court was describing a

---

[1] As it did in the main MDL case, Syngenta cites a 2010 federal district court case that applied *Midwest Knitting*'s broad standard, but Syngenta has not addressed this Court's conclusion that the citation to the later case is not helpful.  *See Syngenta*, 131 F. Supp. 3d at 1206 n.14 (citing *Custom Underground, Inc. v. Mi-Tech Servs., Inc.*, 2011 WL 5008343, at *4 (E.D. Wis. Oct. 20, 2011)).

6

situation in which the parties fell within the same chain of contracts, and thus the case says nothing about that court's attitude concerning application of the ELD in the stranger context.  Moreover, Syngenta has not addressed the Court's previous ruling in one case in the MDL in which the Court rejected this same argument.  *See In re Syngenta AG MIR 162 Corn Litig.*, 2020 WL 569819, at \*7 (D. Kan. Feb. 5, 2020) (Lungstrum, J.).  As in that case, the fact that DeLong may have allocated its risks in its contracts with third parties represents only one consideration, and the Court remains unpersuaded that the applicable state law essentially requires application of the SELD in this case.  *See id.*  The Court therefore denies Syngenta's motion for summary judgment on this basis.

### B.   Windfall on Claims Based on Specific Sales Contracts

Syngenta next seeks summary judgment on DeLong's claims that it suffered damages when certain sales contracts were not completed because DeLong's shipments were rejected.  DeLong does not dispute that it has calculated its claims for such damages by taking the difference between (a) the contract price due to DeLong from the buyers and (b) the fair market price for the commodity at the time of the rejection, otherwise known as the "washout" price; and then subtracting out (c) any down payments that the buyers had already made to DeLong.  For each such sales contract, that calculated amount equals the amount that the buyer became contractually obligated to pay DeLong upon the buyer's default on the contract (after the rejection of shipments began).  Syngenta argues that DeLong has calculated its tort damages incorrectly by seeking to transfer the buyers' contractual liability to Syngenta, without further accounting for any costs that DeLong may

have saved when no sales actually took place, with the possible consequential effect of a windfall for DeLong, who could be placed in a better position than if the alleged act of negligence had not occurred and DeLong's sales had gone through.

The Court agrees with Syngenta concerning the proper calculation of damages relating to these sales contracts. DeLong concedes that its tort damages should be calculated on a "but-for" basis. *See* DeLong's Memorandum in Opposition (Doc. # 124) at 34; *see also State v. Abbott Labs.*, 816 N.W.2d 145, 169 (Wis. 2012) ("Simply put, the proper calculation of damages focuses primarily on what *would have happened* absent the liable conduct, not what *did happen* with the liable conduct."). If the sales had been completed, DeLong (presumably) would have made a profit on the sales, calculated by subtracting its costs (including its own costs to purchase the product) from the amounts that it received from the buyers. When the sales were scuttled, DeLong may have lost that profit—or a portion of that profit, if it was subsequently able to make a smaller profit by disposing of the product in some other way. If Syngenta's negligence proximately caused that loss and Syngenta becomes liable for any such damages, then Syngenta would be liable for DeLong's lost profits. That calculation must necessarily account for all of DeLong's costs incurred (had the sales gone through) and avoided (because the sales did not), as Syngenta argues. The jury would be so instructed at trial.

Nevertheless, Syngenta has not shown that it is entitled to summary judgment on these damage claims, as DeLong may be able to establish such damages, properly calculated, at trial. Syngenta notes that DeLong received significant down payments from

8

the buyers, but Syngenta has not provided any evidence to show that DeLong's damages would be reduced to zero if any particular avoided costs were considered. Accordingly, the Court denies Syngenta's motion for summary judgment with respect to these damage claims.

### C.     *Causation on Corn Spread and Barge Transactions*

Syngenta seeks summary judgment on DeLong's claims for damages relating to its losses on certain corn futures spread transactions and domestic barge sales of DDGS, executed by DeLong in December 2013 after China's rejections of shipments. Syngenta argues that DeLong cannot show that these losses were directly or proximately caused by the alleged negligence as a matter of law.

The test under Wisconsin law for causation-in-fact is whether the negligence was a "substantial factor" in producing the injury. *See Fandrey ex rel. Connell v. American Family Mutual Ins. Co.*, 680 N.W.2d 345, 351 (Wis. 2004). "The phrase 'substantial factor' denotes that the conduct has such an effect in producing the injury as to lead a reasonable person to regard it as a cause, using that word in the popular sense." *See Pieper v. Neuendorf Transp. Co.*, 274 N.W.2d 674, 677 (Wis. 1979). "There may be several substantial factors in any given case." *See id.*; *see also Nieuwendorp v. American Family Ins. Co.*, 529 N.W.2d 594, 599 (Wis. 1995) ("The negligent conduct need not be the sole or primary factor, only a substantial factor."). Causation is normally a question of fact for the jury. *See Fandrey*, 680 N.W.2d at 351.

Syngenta states only conclusorily in its brief that causation-in-fact is lacking here. Nor does Syngenta respond in its reply brief to DeLong's evidence that it undertook these transactions within days of learning of China's rejection of shipments, specifically for the purpose of mitigating expected losses on contracts with Chinese buyers. Syngenta argues that losses on these transactions resulted from DeLong's own decision to gamble on future prices, but it does not address the applicable substantial-factor test. The Court concludes that a reasonable jury could conclude that the alleged negligence was a substantial factor in causing DeLong's losses on these transactions, and it therefore denies the motion for summary judgment on this basis.

Syngenta also argues that DeLong cannot show proximate cause with respect to these transactions as a matter of law. Under Wisconsin law, the proximate-cause analysis has effectively been replaced by a consideration of six public policy factors that may preclude liability in a particular case. *See id.* at 350. Those factors are as follows:

> 1) The injury is too remote from the negligence; 2) Recovery is too wholly out of proportion to the culpability of the negligent tortfeasor; 3) In retrospect it appears too highly extraordinary that the negligence should have brought about the harm; 4) Allowing recovery would place too unreasonable a burden upon the tortfeasor; 5) Allowing recovery would be too likely to open the way to fraudulent claims; or 6) Allowing recovery would enter a field that has no sensible or just stopping point.

*See id.* at 348 n.1 (internal quotations omitted). These considerations present a question of law for the Court. *See id.* at 358. The Wisconsin Supreme Court has noted that "cases in which a causally negligent tortfeasor is relieved of liability on judicial public policy grounds are infrequent and present unusual and extreme circumstances." *See Roehl*

*Transport, Inc. v. Liberty Mutual Ins. Co.*, 784 N.W.2d 542, 568 (Wis. 2010) (internal quotations omitted).

Syngenta has noted these six considerations, but it has not identified a particular one that should preclude liability here; the closest it comes is a reference to the third factor in a citation and a description in its reply brief of DeLong's transactions as "extraordinary". In arguing generally that liability should be precluded here as a matter of public policy, Syngenta argues that DeLong's transactions were speculative; that DeLong was effectively gambling on future price movements; that DeLong had not engaged in such hedging transactions to this extent in the past; and that the possibility of such transactions was not reasonably foreseeable to Syngenta when it commercialized its products.  Syngenta has not cited any authority, however, that suggests that public policy precludes recovery in tort by a plaintiff for such losses.  Particularly in the absence of such authority, the Court cannot conclude at this stage that this is the rare and extreme case in which liability for causally-related losses should be precluded as a matter of public policy.  *See id.* at 357-58 (application of policy factors may await the presentation of evidence at trial).

Moreover, as Syngenta concedes, an injured party has a duty to mitigate its damages by using reasonable means under the circumstances to avoid or minimize the loss, *see Kuhlman, Inc. v. G. Heileman Brewing Co., Inc.*, 266 N.W.2d 382, 384 (Wis. 1978), and DeLong contends that it entered into these transactions in order to mitigate expected damages from the rejection of shipments by China.  The injured party is given "a wide latitude of discretion" in discharging its duty of reasonable mitigation, and the question

11

whether the mitigating party exercised ordinary care is one for the jury.  *See id.* at 385.  The Court does not agree with Syngenta's suggestion that the fact that DeLong had not previously engaged in hedging to this extent demonstrates that DeLong acted unreasonably as a matter of law.  The Court concludes that a question of fact remains for the jury concerning the reasonableness of DeLong's efforts to use these transactions to mitigate losses from rejected shipments.[2]  Moreover, as noted above, it declines to rule at this stage as a matter of public policy that DeLong may not recover for these losses.  Accordingly, the Court denies Syngenta's motion for summary judgment on these claims.

> D.      *Claim for Lost Profits*

Syngenta seeks summary judgment on DeLong's claim for lost profits on sales of DDGS for multiple related reasons.  Syngenta first argues that the claim depends on testimony from DeLong's expert witness, Colin Carter, and that because Dr. Carter's testimony should be excluded, for the reasons set forth in Syngenta's separate *Daubert* motion, this claim cannot stand.  Syngenta also argues that DeLong has calculated its damages on this claim by using an inappropriate benchmark period and that DeLong has failed to account for particular factors that would undermine the claim that certain lost

---

[2]  Syngenta suggests that allowing liability for these losses would mean that an injured party could place a large bet on the Kentucky Derby to try to mitigate losses.  Even assuming that such a mitigation effort would be deemed unreasonable as a matter of law, the comparison is not apt, as these transactions are not wholly unrelated to DeLong's business in which it suffered the losses that it was trying to mitigate.  As discussed below, *see infra* Part III.E., the trial court will decide whether DeLong's claims for such losses present a proper issue of mitigation; and if they do, the jury will decide how reasonable DeLong's decisions were in this regard.

profits resulted from the alleged negligence.  These issues are all addressed by the parties in their briefs supporting and opposing the *Daubert* motion, and whether Syngenta may be entitled to summary judgment for these reasons will depend greatly on the ruling on that motion.  The Court has announced its intention to allow the transferor court to rule the parties' *Daubert* motions on remand.  Accordingly, the Court denies Syngenta's motion for summary judgment on this basis.  The parties remain free to argue to the remand court the extent to which any *Daubert* ruling may prove dispositive of any damage claim.

### E.    *Damages Relating to Duracade*

Finally, Syngenta seeks summary judgment on any claim that Syngenta was negligent with respect to its commercialization of its Duracade product.  Syngenta notes DeLong's admission that it did not suffer any separate damages from that act.  DeLong argues, however, that such negligence may have impacted the amount of its damages from the commercialization of Viptera.  For evidence, DeLong relies on its expert's opinion that Duracade, which was not approved in China until July 2017, "served as a black cloud over the Chinese market for U.S. feedstuffs for at least three years;" and the expert's testimony that Duracade made the situation with Viptera worse and "continued the problem."  The Court agrees with Syngenta that this evidence is not sufficient to support a claim of negligence based on the commercialization of Duracade.  The limited evidence cited by DeLong in opposition to summary judgment does not tend to show that DeLong suffered any particular harm—or that any particular damages were increased or exacerbated—

because of the commercialization of Duracade.  Accordingly, the Court grants summary judgment in favor of Syngenta on DeLong's claim of negligence relating to Duracade.[3]

### III.   DeLong's Motion for Summary Judgment on Various Defenses

DeLong seeks summary judgment on various defenses asserted by Syngenta in the pretrial order.  *See* Pretrial Order at ¶ 4.b.2, 3, 5, 7, 11, 14, 20, 22, 26.  The Court addresses these defenses in the order in which DeLong has addressed them in its brief.

#### A.   *Assumption of the Risk*

DeLong seeks summary judgment on Syngenta's assumption-of-the-risk defense. Syngenta concedes that Wisconsin has abolished assumption of the risk as a separate defense, although it may be an element of contributory negligence.  *See Shain v. Racine Raiders Football Club, Inc.*, 726 N.W.2d 346, 352 (Wis. Ct. App. 2006).  Thus, Syngenta does not oppose summary judgment on its separate defense of assumption of the risk, and the Court therefore grants summary judgment in DeLong's favor on that defense.

#### B.   *Comparative Negligence*

DeLong seeks summary judgment on Syngenta's defense under Wisconsin's comparative negligence statute, Wis. Stat. § 895.045(1).  In its comparative fault disclosure, Syngenta asserted that DeLong's damages were also caused by the fault of DeLong itself, China, DeLong's Chinese customers, and other exporters to China.

---

[3]   By this ruling, the Court does not intend to suggest any opinion concerning the admissibility of evidence concerning Duracade.

Syngenta concedes that the Court's prior rulings in the MDL, if applied here, would preclude its comparison of any fault of China or other exporters. Syngenta does not seek to relitigate those issues here, but merely reserves its right to raise its prior arguments on appeal. Accordingly, the Court grants the motion for summary judgment on this defense to the extent based on any fault of China or other exporters.

The Court then turns to Syngenta's defense based on DeLong's own alleged fault. Syngenta claims that certain damages were caused by the following instances of negligent conduct by DeLong: (1) entering into transactions after China began rejecting shipments; (2) failing to enforce contracts under which DeLong's buyers bore the risk of rejection by China; (3) entering into contracts that did not require the buyers to bear the risk of rejection; and (4) entering into certain corn futures trades and domestic barge transactions.

The Court agrees with DeLong that the first of these negligence claims is precluded by the preemption provision of the Grain Standards Act (GSA), 7 U.S.C. § 87g(a). The Court has ruled previously in the MDL that the GSA preempts any claim by which a party seeks to impose a state tort law duty that would require another party to engage in conduct involving the testing or description of corn with respect to the presence of the trait MIR 162, including any duty to segregate or channel Viptera corn; and that the GSA consequently preempts any claim based on a duty not to sell any corn to China because of the possibility of the presence of the trait and rejection by China. *See In re Syngenta AG MIR 162 Corn Litig.*, 2016 WL 1312519, at *2-3 (D. Kan. Apr. 4, 2016) (Lungstrum, J.); *In re Syngenta AG MIR 162 Corn Litig.*, 2016 WL 4382772, at *2-4, 8 (D. Kan. Aug. 17,

15

2016) (Lungstrum, J.).  Moreover, the Court has applied that ruling to preclude a claim of comparative negligence.  *See In re Syngenta AG MIR 162 Corn Litig.*, 249 F. Supp. 3d 1224, 1244 (D. Kan. 2017) (Lungstrum, J.).

Syngenta opposes summary judgment on this defense claim, arguing that the duty it seeks to impose does not require description or testing, as precluded by the preemption provision, but instead would prohibit sales of any DDGS by DeLong, regardless of the presence of the non-approved trait.  Syngenta has not addressed the Court's ruling, however, in which it rejected that exact argument.  As the Court explained previously, such a ban on the sale of any corn products to China because of the possibility of the presence of the trait, imposed by state law, "would run afoul of Congress's unmistakable intent to reserve to the federal government any such regulation on interstate or foreign commerce in grain based on characteristics of the grain."  *See Syngenta*, 2016 WL 1312519, at *2.

Syngenta also argues that its claim relating to DeLong's sales of DDGS should not be preempted because DDGS is not a "grain" under the GSA.  The Court has also previously rejected that same argument, based on the fact that because the DDGS was produced with corn containing MIR 162, a party could not satisfy a state-law duty relating to the handling or sale of DDGS without having to test or describe or ban the sale of the constituent corn.  *See Syngenta*, 2016 WL 4382772, at *4.  Accordingly, the Court grants summary judgment to DeLong on Syngenta's first claim of comparative negligence by DeLong.

16

The Court also agrees with DeLong that Syngenta has waived its other three claims of comparative negligence by DeLong by failing to disclose them previously. The Court's scheduling order required Syngenta to identify all those with whom it sought to compare fault and "to specify the nature of the fault which is claimed." In its subsequent disclosure, in identifying DeLong as a party whose fault it sought to compare, Syngenta cited DeLong's entering into contracts for sale to China despite the presence of MIR 162 (the first claimed negligence by DeLong), but it did not mention the other three claims of negligence by DeLong that it asserts now. Nor does the pretrial order include any contention by Syngenta that DeLong was negligent in the manner now claimed. Syngenta has never sought to amend its disclosure or the pretrial order to include such claims of comparative negligence. Nor did Syngenta seek leave to submit additional briefing to respond to DeLong's waiver argument, even after the Court allowed Syngenta to argue for supplemental summary judgment briefing after this case was remanded by the Tenth Circuit (Syngenta sought additional briefing and discovery only with respect to its limitations defense). Accordingly, the Court deems these comparative negligence claims waived, and DeLong is awarded summary judgment on all claims of comparative negligence by DeLong.

Finally, Syngenta claims comparative negligence by DeLong's customers based on those customers' refusal to honor their contracts with DeLong, under which they bore the risk of rejection by China. By that claim, however, Syngenta seeks to enforce not a duty in tort, but a duty of the customers created by contract (their purchase contracts with

DeLong).  In support of this claim, Syngenta cites only *Presser v. Siesel Construction Co.*, 119 N.W.2d 405 (Wis. 1963), in which the Wisconsin Supreme Court noted that it had held in another case (*Colton*) that "the negligent performance or nonperformance of a duty created by a contract may constitute actionable negligence."  *See id.* at 408 (citing *Colton v. Foulkes*, 47 N.W.2d 901 (Wis. 1951)).  Far more recently, however, the Wisconsin Supreme Court has explained the limits of *Colton*, which was meant to indicate only that "'the state of things' which arises out of a contract furnishes the occasion for the tort, but not the underlying duty for the tort;" and the court has held that "there must be a duty existing independently of the performance of the contract for a cause of action in tort to exist."  *See Landwehr v. Citizens Trust Co.*, 329 N.W. 2d 411, 414 (Wis. 1983) (citing *Colton*, 47 N.W.2d 901), *quoted in Greenberg v. Stewart Title Guaranty Co.*, 492 N.W.2d 147, 152 (Wis. 1992) (reaffirming holding of *Landwehr*); *see also Atkinson v. Everbrite, Inc.*, 592 N.W.2d 299, 302 (Wis. Ct. App. 1999) (party asserting tort claim must identify a legal duty existing independently of the contract).

Syngenta has not identified any separate duty owed by Delong's customers to pay DeLong's losses on those sales; rather, it contends only that the customers were obligated to pay under the contracts.  Therefore, Syngenta cannot assert such a claim of negligence by the customers.

In addition, as DeLong points out, Wisconsin law "does not allow the comparison of fault of a negligent tortfeasor with that of an intentional tortfeasor."  *See Imark Indus., Inc. v. Arthur Young & Co.*, 436 N.W.2d 311, 319 (Wis. 1989).  Syngenta has not explained

how the customers could negligently have decided not to honor their contracts with DeLong.   For these reasons, Syngenta may not maintain its claim of comparative negligence by DeLong's customers.

Accordingly, the Court grants DeLong's motion for summary judgment on Syngenta's comparative negligence defense in its entirety, and Syngenta will not be permitted at trial to compare its fault with the fault of DeLong or any third party.

### C.   *Superseding or Intervening Cause*

DeLong seeks summary judgment on Syngenta's defense that DeLong's claims are barred by the doctrines of superseding cause and intervening cause.   The Wisconsin Supreme Court has made clear that Wisconsin's broad substantial-factor test for the cause-in-fact element of a negligence claim has eliminated the doctrines of superseding and intervening cause, and that those doctrines are now subsumed in the analysis under Wisconsin law of the six public policy factors that may be used by courts to limit liability in negligence claims.  *See Fandrey*, 680 N.W.2d at 352 n.8.  In light of that fact, Syngenta concedes in its response brief that superseding and intervening cannot serve as a defense in this case.  Accordingly, DeLong's motion for summary judgment is granted with respect to that specific defense under Wisconsin law.

The question then becomes whether Syngenta's liability for the alleged negligence should be precluded because of one or more of the public policy factors (listed above in the discussion of proximate cause).  In arguing for such preclusion, Syngenta alleges four intervening causes of DeLong's alleged harm:  DeLong's decision to enter into sales to

China after China had begun rejecting shipments; DeLong's failure to recover its losses by enforcing its sales contracts that placed the risk of rejection on the buyers, and the buyers' failure to pay under those contracts; DeLong's decisions to "gamble" by entering into the corn futures trades and the barge transactions; and China's conduct in rejecting shipments. DeLong argues that the Court should conclude as a matter of law that public policy does not preclude liability here, particularly because those other alleged causes were foreseeable by Syngenta.

The Court agrees that application of the six public policy factors presents a question of law for a court, *see id.* at 352, 358, but such application may await the presentation of evidence at trial if the facts of the case are not settled. *See id.* at 357-58. In this case, the Court concludes that the better approach is for the transferor court to apply the public policy factors upon consideration of the evidence at trial. The Court therefore denies the motion to the extent that DeLong seeks summary judgment with respect to the application of the public policy factors to preclude liability.[4]

---

[4] The Court does not necessarily agree with DeLong that Syngenta bears the burdens of production and proof with respect to whether liability should be precluded under the public policy factors. DeLong relies on the inclusion of "superseding cause" among the list of affirmative defenses in Wisconsin's civil procedure rules, *see* Wis. Stat. 802.02(3), but, as discussed, that defense has been eliminated under Wisconsin law. DeLong has cited no authority suggesting that a defendant bears the burden with respect to the application of these factors. In fact, in *Fandrey*, the Wisconsin Supreme Court indicated that this analysis could be seen as the second step in the legal cause analysis or the fifth element of the cause of action (after duty, breach, cause, and damages), thereby suggesting that this analysis takes place as a part of the plaintiff's case. The Court need not decide the issue here, however, as the issue is more appropriately addressed by the trial court when it undertakes the analysis.

D.      _Compliance with Industry Standards or Government Regulations_

DeLong seeks summary judgment on Syngenta's defenses that it complied with industry standards and government regulations. Syngenta concedes that compliance with such standards or regulations is not an absolute defense to the negligence claim, but that such compliance is merely a factor for the jury to consider in determining whether Syngenta satisfied its duty of care. Accordingly, the Court grants summary judgment in DeLong's favor on these defenses. The Court makes no ruling on the admissibility of evidence relating to such compliance, however.

E.      _Mitigation of Damages_

DeLong seeks summary judgment on Syngenta failure-to-mitigate defense. *See Kuhlman, Inc. v. G. Heileman Brewing Co., Inc.*, 266 N.W.2d 382, 384 (Wis. 1978) ("An injured party has a duty to mitigate damages, that is, to use reasonable means under the circumstances to avoid or minimize the damages."). In support of this defense, Syngenta cites the same alleged conduct by DeLong that it cited in support of its comparative negligence and public policy defenses, namely DeLong's decisions to make sales after rejections had begun, to forego enforcement of its contracts, and to enter into the corn futures and barge transactions. It is not clear, however, whether the cited transactions are better considered under the causation and policy analyses, as DeLong specifically seeks damages for its losses on those transactions; or whether they may properly be analyzed as failed efforts at mitigation. Thus, the Court concludes that issues relating to mitigation are better resolved by the trial court, who will also apply the public policy factors as

21

appropriate.  Accordingly, the Court denies summary judgment with respect to the first and third bases for Syngenta's defense.

With respect to DeLong's failure to enforce its contracts, Syngenta relies on the following facts: DeLong prevailed in an arbitration to enforce one such contract; DeLong's representatives testified that they believed that they would prevail and secure judgments on the other contracts; and any such judgments would be enforceable against buyers in China under an international convention to which China is a party.  DeLong argues that Syngenta has not produced evidence that any such judgments or awards could actually be collected.  Nevertheless, the Court concludes that Syngenta has met its burden to produce evidence from which a reasonable jury could find that DeLong failed to use reasonable means to mitigate its damages.  Accordingly, the Court denies the motion for summary judgment with respect to this basis for the defense as well.

> ### F.   _Collateral Sources_

DeLong seeks summary judgment on Syngenta defense that DeLong's damages must be reduced "[t]o the extent DeLong has received payments from other sources in satisfaction of its alleged damages, including, but not limited to, any insurance programs." DeLong argues that such a defense is foreclosed by Wisconsin's adoption of the collateral-source rule, "an equitable doctrine that provides that where a plaintiff is injured by the tortious conduct of another, the injured plaintiff's recovery will not be reduced by payments the plaintiff receives from other sources."  _See Estate of Kriefall v. Sizzler USA Franchise, Inc._, 816 N.W.2d 853, 871 (Wis. 2012).  Syngenta concedes that this rule would

bar a reduction for insurance payments, but it disputes that an item such as a down payment to DeLong from a purchaser would fall under the collateral source rule. DeLong states in its reply that its experts have accounted for such down payments in calculating DeLong's damages, and thus it concedes that it does not claim the amounts of any such down payments as damages. Syngenta has not identified any particular element in DeLong's damage claims for which a reduction would be appropriate despite the collateral source rule. Accordingly, the Court grants summary judgment in favor of DeLong on this defense, to the extent that Syngenta seeks a reduction for any payment that falls within the scope of the collateral source rule.

### G.   *Specific Defenses to Claims for Punitive Damages*

DeLong seeks summary judgment on Syngenta's defense that "DeLong's claims for punitive damages are barred by the doctrines of waiver, estoppel, unclean hands, and/or *in pari delicto*." Syngenta states in response that it does not seek to assert those defenses in light of Wisconsin law, although it does continue to assert that DeLong is not entitled to such damages. Accordingly, DeLong's motion for summary judgment on these defenses to the punitive damages clams is granted as unopposed.

### H.   *Antitrust Defense*

DeLong seeks summary judgment on Syngenta's defense that DeLong's claim seeks to restrain trade unlawfully, in violation of antitrust law. Syngenta argues that if DeLong contends at trial that compliance with the applicable standard of care required Syngenta to enter into particular agreements or coordinate its actions with others in the industry,

Syngenta must be permitted to argue and show that such agreements or coordination would have been unlawful. DeLong insists that Syngenta could have complied with the standard of care with respect to its commercialization of Viptera without entering into any agreement or violating the law. Nevertheless, DeLong does not disavow any argument that Syngenta could or should have entered into a particular agreement within the industry. If DeLong does make any such argument at trial, Syngenta should be permitted to argue as appropriate that such conduct would be unlawful. Accordingly, the Court denies the motion for summary judgment on this defense. Again, however, the Court does not comment on the admissibility of any particular evidence at trial.

## I.   *Legitimate Business and Economic Justifications*

DeLong seeks summary judgment on Syngenta's defense based on the "independent, legitimate business and economic justifications" for its conduct. In response, Syngenta concedes that such justifications do not make its conduct reasonable as a matter of law, and thus it does not dispute that such justifications do not provide a stand-alone defense (although such justifications may nonetheless be relevant). Syngenta also states that it does not intend to raise the business judgment rule as a defense. Accordingly, the Court grants summary judgment in favor of DeLong on this defense, although it makes no ruling concerning the admissibility of evidence concerning such justifications for Syngenta's conduct.

## J.   *Statute of Limitations*

Finally, DeLong seeks summary judgment on Syngenta's statute-of-limitations defense. As it did in opposing Syngenta's motion for summary judgment on this issue, DeLong argues that its claim is timely as a matter of law because it did not suffer damage until after the relevant date of October 11, 2011, and because the limitations period was tolled during the period in which another company asserted claims in the MDL on behalf of a putative class of exporters.

The Court denies the motion. First, although the Tenth Circuit held that DeLong's claim was not time-barred as a matter of law, it did not also hold that the claim was timely as a matter of law. *See DeLong*, 2022 WL 1510596. That court noted that it was required to draw all inferences in DeLong's favor and that Syngenta had failed to show that no reasonable person could disbelieve that DeLong suffered harm before October 2011. *See id.* at *3. In ruling on *DeLong's* motion, however, the Court must view all inferences in *Syngenta's* favor, and the evidence provided by Syngenta and discussed by the Tenth Circuit—evidence that the Tenth Circuit noted was "certainly suggestive," *see id.*—creates an issue of fact for the jury concerning whether DeLong suffered harm prior to the relevant date.

Second, the Court addressed DeLong's tolling argument in its prior order, holding that the Court would not permit cross-jurisdictional *American Pipe* tolling as asserted by DeLong in the absence of Wisconsin authority supporting such tolling. *See Syngenta*, 2021 WL 365091, at *4-6. The Tenth Circuit did not consider the tolling issue in its opinion.

*See DeLong*, 2022 WL 1510596, at *1. The Court reaffirms its prior ruling concerning tolling, and it therefore denies DeLong's motion for summary judgment on this defense.

IT IS THEREFORE ORDERED BY THE COURT THAT defendants' motion for summary judgment (Doc. # 106) is hereby **granted in part and denied in part**. The motion is granted with respect to DeLong's claim of negligence with respect to defendants' commercialization of Duracade, and judgment is awarded to defendants on that claim. The motion is otherwise denied.

IT IS FURTHER ORDERED BY THE COURT THAT plaintiff's motion for summary judgment (Doc. # 90) is hereby **granted in part and denied in part**, as more fully set forth herein.

IT IS SO ORDERED.

Dated this 28th day of February, 2023, in Kansas City, Kansas.

   /s/   John W. Lungstrum
Hon. John W. Lungstrum
United States District Judge